## LAMPSON LUMBER COMPANY, INC.
*vs.*
## BOARD OF ZONING APPEALS OF
## THE CITY OF NEW HAVEN ET ALS.

Court of Common Pleas  New Haven County  File No. 33670

MEMORANDUM FILED APRIL 20, 1943.

*Morris Tyler* and *John B. Grant,* of New Haven, for the Plaintiff.

*Vincent P. Dooley,* Corporation Counsel, and *A. Frederick Mignone,* Assistant Corporation Counsel, for the defendant Board of Zoning Appeals of the City of New Haven.

*Anthony Avallone,* of New Haven, for the other Defendants.

FITZGERALD, J.   This is an appeal by the plaintiff from the action of the defendant Board of Zoning Appeals of the City of New Haven in issuing its certificate of approval respecting the proposed use of certain property for a motor vehicle junk yard in favor of the defendant Sigfrid Josephson. The appeal was tried to the court in early March.   Some few days ago, and after this memorandum was in the process of preparation, a decision in a zoning case rendered by the Superior Court at Bridgeport*, held in effect that the Act of the General Assembly, under which this court functions, is unconstitutional.   Notwithstanding the decision referred to, counsel in this case have stated to the court that they, neither individually nor collectively, presently claim or will hereafter make the claim that the judgment of this court is invalid on constitutional grounds.   This foreword is deemed of sufficient importance to be made a part—and is made the prefatory part—of the memorandum of decision of the court in the within case.

On September 3, 1942, the defendant Josephson filed a written application with the defendant Board of Zoning Appeals of the City of New Haven for permission, in the nature of a certificate of approval, to conduct a motor vehicle junk yard and sale of used cars parts on a vacant lot located at

* *Osborn vs. Zoning Board of Appeals* (Cornell, J.), 11 Conn. Sup. 489.

and known as Nos. 145-151 Water Street, New Haven. The property in question is owned by the defendant General Finance Mortgage Company. It appears that the relationship between the Mortgage Company and Josephson, who conducts his business under the name and style of Acme Auto Parts, is that of landlord and tenant for the purposes of this case.

A hearing on the application was held by the board on the evening of September 22, 1942. Notice of the hearing had been published prior thereto on September 15th, 16th and 17th in the New Haven Journal Courier and the New Haven Register, morning and afternoon papers respectively, having a wide circulation in the City of New Haven and the vicinity thereof. At the hearing the plaintiff company, owner of the adjacent property on the west and north of the vacant lot in question to which the application related, was not represented by counsel, but was represented by three of its officials. Josephson, the applicant, had the foresight to appear with counsel to present his views.

The plaintiff's opposition to the application was on three grounds: (1) the proposed use of the lot for the desired purposes would create a fire hazard because large quantities of lumber are stored on its adjacent property; (2) the proposed use would detrimentally affect the value of plaintiff's property; and (3) the proposed use would constitute an unsightly appearance. Later, the court will have occasion to comment on the first ground only.

In the executive session following the hearing, the members of the board present unanimously approved the application of Josephson and granted the same.

The appeal to this court by the plaintiff from the aforesaid action of the Board gives rise to one initial question and to a second major question, depending upon whether the initial question is answered in the affirmative. The initial question may be stated thus: Did the defendant board on September 22, 1942, have the authority to act upon the application of Josephson, in view of chapter 171 of the General Statutes, Revision of 1930, entitled "Motor Vehicle Junk Yards", as amended by unrepealed sections 1238c-1248c of the 1935 Cumulative Supplement to the General Statutes?

Under the question stated, it is the claim of the plaintiff that the 1935 statutes (§§1238c-1248c) control, as against the

claim of the defendants that the applicable and controlling statutes are those enacted by the General Assembly in 1941 (General Statutes, Supp. 1941, chapt. 82, Pt. III, subd. Bb, entitled "Dealers' and Repairers' Licenses", §§ 211f-226f).

It is conceded that the 1935 statutes have never been expressly repealed. It is, however, the argument of the defendants that the 1935 statutes have, in effect, been repealed by implication by virtue of the enactment of the 1941 statutes which, they claim, are sufficiently exclusive and cover adequately the same subject matter.

Section 1239c, prefaced "Purpose of chapter", provides, among other things, that "in any town, city or borough having a duly established zoning commission or town or city planning commission or board, such zoning commission, planning commission or board shall have the authority to create such restricted districts by the adoption of appropriate rules, orders or regulations." *The 1941 Statutes contain no such provision.*

In the City of New Haven there is, and has been for many years, a duly organized and functioning City Plan Commission. On February 6, 1935, this commission adopted in accordance with chapter 171 of the General Statutes, Revision of 1930, as amended aforesaid, and which amendments are now contained in the 1935 Cumulative Supplement, certain rules and regulations (Exhibit A) expressly prohibiting the establishing of "motor vehicle junk yards or motor vehicle junk business" in certain zones of New Haven, including Industry A zone, which is the zone wherein the lot in question is, and has been located prior to the adopted restrictions.

The defendants concede the authority of the City Plan Commission to adopt the foregoing regulative restrictions of February 6, 1935, but argue that such has been nullified by the scope of the 1941 statutes and particularly section 214f thereof, which provides that the certificate of approval *de* location by the local authority "in any city or town having a zoning commission and a board of appeals....shall [first] be obtained from the board of appeals." Checking the latter statute against section 1239c, it appears that reference to the "city planning commission", as such, is omitted, and the designation "board of appeals" expressly inserted.

The evidence at the trial, together with the application of Josephson and the inspection of the premises by the court in

company with counsel (April 15, 1943) discloses that the lot in question is fenced in and not open to view from a public highway. This aspect, on its face, would seem to make inapplicable the statutory definition of "motor vehicle junk yard" or "motor vehicle junk business" as contained in the orbit of section 1238c. Nevertheless, section 1239c prefaced "Purpose of chapter", is too broad in scope and too clear of purpose from the standpoint of public welfare to be tortured into a construction of non-application in the event that an applicant proposes to conduct in fact, a "motor vehicle junk business" or "motor vehicle junk yard" (such as Josephson proposes to do on the lot in question) in a fenced-in area adjoining a large lumber yard on two sides and located in a general lumber yard neighborhood of other property owners.

As pointed out previously, there is no provision in the 1941 statutes conferring the adoption of restricted areas as in the 1935 statutes. It may be argued that this right would exist in any zoning authority independent of the statutes in question, but the court has been advised of no other imposed zoning restrictions. Whether or not the law-making body of the City of New Haven, which is the Board of Aldermen, ·has to date enacted any ordinances of a restricted nature respecting the exclusion of junk yards and the junk business from certain zones, was not presented to the court. If such ordinances there be, the court, nevertheless; cannot take judicial notice of their existence and of their terms. (*Young vs. West Hartford*, 111 Conn. 27, 31; *Appeal of Phillips*, 113 id. 40, 44); and for the purposes of this case, therefore, the only adopted restrictions are those contained in the promulgation of the City Plan Commission (Exhibit A) of February 6, 1935, unrepealed to date by that municipal body.

Has there then been a repeal by implication of the 1935 statutes by the 1941 statutes? This narrow inquiry brings up for consideration two propositions of law respecting this phase of the matter:

(a) "It is a familiar .rule that when a later statute is exclusive, that is, when it covers the whole subject to which it relates, it will be held to repeal by implication all other prior statutes on the matter, whether they are general or special." See *Hutchinson vs. Hartford*, 129 Conn. 329, 332, and cases there cited from which the foregoing quotation is taken.

(b) "Such repeals [by implication] are not favored, and

when an earlier and later statute can be reconciled, it is the duty of the court to so construe them that the latter may not operate as a repeal of the former." *Costa vs. Reed,* 113 Conn. 377, 385, and cases there cited.

Under the initial question the court concludes:

1. That the 1935 statutes primarily concern the character of the junk business and the authority of the city plan commission in a city such as New Haven, to regulate the same by restrictions *de* areas.

2. That the 1941 statutes, as indicated by their chapter heading, have reference to dealers and repairers, as such, and not to the character of the business and regulations by local authority relating thereto.

3. That the 1941 statutes are not exclusive.

4. That there is no repeal by implication because in the main the 1941 statutes are not repugnant to the 1935 statutes; they can be reconciled.

In view of the foregoing conclusions of the court under the initial question, it becomes unnecessary to consider the second question except incidentally. The question may be stated thus: If the board had the authority to act upon the application of Josephson, was the action that it did take on September 22, 1942, illegal, arbitrary, or in abuse of its discretion?

There is no question but that the newspaper notices published on September 15th, 16th and 17th, with the exception of those of the 15th, fell short of the statutory requirement of "not less than one week before the date of such hearing." (§215f.) By way of comparison see *St. John's R. C. Church vs. Board of Adjustment or Appeals,* 125 Conn. 714, 721, in which a similar requirement contained in another statute is considered. Neither can it be said that the plaintiff *waived* this irregularity. *National Transportation Co., Inc. vs. Touquet,* 123 Conn. 468, 475. But in a larger sense the plaintiff was not prejudiced. It was in fact represented at the hearing of September 22nd by three of its officials and for aught that appears, their objections to the application were not impeded.

There is no question but that the Chief of Police of New Haven to date has not approved the certificate granted by the

board as required by section 214f. The statutory expression, "In addition", obviously has reference to such approval *after* the board has acted and before the Commissioner of Motor Vehicles is requested to act.

Hence two of the three claims of plaintiff may be disposed of under the second question. The third claim of the plaintiff, in any event, is well taken. It is predicated upon the proposition that suitability of location as required by section 215f does not exist and that the action of the board on this score was illegal, arbitrary and/or in abuse of its discretion.

At the hearing on September 22, 1942, the plaintiff stressed that the proposed use of the lot for the desired purposes would create a fire hazard because large quantities of lumber are stored on its adjacent property. See third paragraph of this memorandum; see also minutes of public hearing, second paragraph (Exhibit C); minutes of executive session (Exhibit C).

It appears that some years ago when a similar business was conducted on the lot in question (the authority for doing so was not put in evidence by the defendants and it is assumed by the court to have been an unauthorized enterprise), fires broke out. It further appears that blow torches or other similar devices are used, and will be used, in connection with the proposed use of the lot. Furthermore, inspection of the premises by the court and the observation of the stocked lumber yards of the plaintiff to the west and north of the lot in question, to say nothing of the surrounding neighborhood which could well be styled a "lumber yard district", coupled with the comparative narrowness of Water Street, present every earmark of fire hazard conceivable, by reason of the proposed use of the lot in question.

Suitability of location is non-existent in fact and in law. An administrative board should not have to wait for a fire having the proportions of the recent Boston debacle to take place before resorting to safeguards. Taxpayers, adjoining property owners, and the public generally, are entitled to a guarded protection of their human and legal rights under our system of laws. The board clearly abused its discretion and acted illegally and arbitrarily in this aspect of the case even though it had (assuming but not conceding) the authority under the 1941 statutes to consider the application.

In view of all the foregoing, there is error in the action of the defendant board in issuing its certificate of approval to the defendant Josephson on September 22, 1942, based on the latter's application *de* property at Nos. 145-151 Water Street. The appeal is sustained and judgment will enter accordingly.

Plaintiff's counsel will prepare a judgment file for approval and signature by the court conforming to this memorandum.